<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BEIJING GONGMEI IMPORT & EXPORT CO., LTD.; ZHEJIANG SHIXIN TEXTILE GARMENT CO., LTD., | Civil Action No. 2:10-cv-02821-SDW-MCA |
| Plaintiffs, | |
| v. | **OPINION** |
| REED IJBARA; MOHAMMED IJBARA; NEW VENEZIA TEXTILES, INC.; PRINCESS SHEET CORPORATION, INC.; MIDDLE EAST TEXTILES, INC.; NEW GOLDEN LINEN CORP.; and JOHN DOES 1 through 20, | August 6, 2012 |
| Defendants. | |

**WIGENTON, District Judge.**

Before the Court is plaintiffs Beijing Gongmei Import & Export Co., Ltd. ("Gongmei") and Zhejiang Shixin Textile Garment Co., Ltd.'s ("Shixin") (collectively "Plaintiffs") motion for partial summary judgment ("Plaintiffs' Motion"). Also before this Court is defendants Reed Ijbara ("R. Ijbara"), Mohammed Ijbara ("M. Ijbara"), New Venezia Textiles, Inc. ("New Venezia"), Princess Sheet Corporation, Inc. ("Princess Sheet"), Middle East Textiles, Inc. ("Middle East"), Liberty Textiles, Inc. ("Liberty Textiles"), New Golden Linen Corp. ("New Golden"), and John Does 1 through 20's (collectively "Defendants") motion for partial summary judgment ("Defendants' Motion").

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332, 1391(a).  This Court decides these motions without oral argument pursuant to Federal Rule of Civil Procedure 78.

For the reasons stated below, this Court **DENIES** Plaintiffs' Motion and **DENIES** Defendants' Motion.

**FACTUAL AND PROCEDURAL HISTORY**

Plaintiffs Gongmei and Shixin are exporters of household textiles and other goods based in the People's Republic of China.  (Am. Compl. ¶¶ 1(a), 1(b), 6.)  Defendants New Venezia and Princess Sheet are importers of bedding products based in New Jersey.  (Am Compl. ¶¶ 1(e), 1(f), 6; Countercl. ¶¶ 1, 4.)  In or about May 2004, Defendants New Venezia and Princess Sheet began importing goods from Gongmei to their offices in New Jersey.  (Am. Compl. ¶¶ 6-7.)  Defendants New Venezia and Princess Sheet also placed numerous orders with Plaintiff Shixin.  (*Id*. ¶¶ 19-20.)  Between May 2004 to October 2006, Defendants New Venezia and Princess Sheet paid all amounts due to Plaintiff Gongmei.  (*Id*. ¶ 9.)  Plaintiffs allege that starting in or about October 2006, Defendants purchased and received no less than $925,953.33 and $427,471.03 worth of goods from Plaintiffs Gongmei and Shixin respectively, for which Defendants failed to pay.  (*Id*. ¶¶ 10, 15, 22.)

On or about August 7, 2007, Tian Lixin ("Lixin") and Bao Ping Jian, representatives for Plaintiffs Gongmei and Shixin, respectfully, travelled to the United States from China.  (*See* Am. Compl. ¶¶ 11, 23; Declaration of Tian Lixin ("Lixin Decl.") 2 at ¶¶ 4, 6; *see also* Declaration of Reed Ijbara ("R. Ijbara Decl.") ¶ 9.)  According to Lixin, the purpose of the visit was to meet and negotiate with Defendants R. Ijbara, New Venezia, and Princess Sheet about payments due to each Plaintiff.  (Lixin Decl. 2 at ¶ 5.)  R. Ijbara asserts that the visit was "in an effort to repair the relationship" between Plaintiffs and Defendants.  (R. Ijbara Decl. at ¶ 9.)  Plaintiffs allege that

during the August 7, 2007 visit they "secured 'Payment Commitments' whereby Defendants New Venezia and Princess Sheet agreed to pay . . . a total of $427,471.03" ("August 7, 2007 Payment Commitment") to Plaintiff Shixin.  (Am. Compl. ¶ 24.)

In April 2008, Defendants paid Plaintiff Gongmei $4,000.  (Am. Compl. ¶ 15; R. Ijbara Decl. ¶ 10.)  On or about September 20, 2008, Lixin again travelled to the United States, at that time representing both Plaintiffs Gongmei and Shixin.  (Am. Compl. ¶¶ 11, 23; Lixin Decl. 4, at ¶ 14.)  Lixin was accompanied by Chen Wei, who served as his companion and assistant.  (Lixin Decl. 4, at ¶ 14.)   Plaintiffs allege that during this visit, they secured another payment commitment ("September 2008 Payment Commitment")[1] that required the Defendants to make the $427,471.03 payment to Plaintiff Shixin "by the end of Dec. 2009[.]"[2]  (Am. Compl. ¶ 24.) Plaintiffs also allege that they "secured a 'Payment Commitment' whereby Defendants New Venezia and Princess Sheet agreed to pay to Plaintiff Gongmei a total of $821,953.33[3] 'by the end of Dec. 2009.'"  (Am. Compl. ¶ 12.)  Defendant R. Ijbara asserts that he did not sign any of these alleged Payment Commitments.  (R. Ijbara Decl. ¶ 12.)

Plaintiffs filed an initial complaint on June 2, 2010 and then filed an amended complaint ("Amended Complaint") on August 9, 2010.  (Dkt. Nos. 1, 9.)  In their Amended Complaint, Plaintiffs assert eleven causes of action: (1) breach of contract under the United Nations Convention on Contracts for the International Sale of Goods against Defendants R. Ijbara, M. Ijbara, New Venezia and Princess Sheet; (2) breach of contract under state law against Defendants R. Ijbara, M. Ijbara, New Venezia and Princess Sheet; (3) account stated against

---

[1] The September 20, 2008 Payment Commitment together with the August 7, 2007 Payment Commitment will collectively be referred to as the "Payment Commitments."
[2] The September 20, 2008 Payment Commitment notes that R. Ijbara claimed to have paid "USD7,000-in Sept., 2008 and up till now I still owe USD420,471.03 to [Shixin]."  (Am. Compl. Ex. E at 2.)
[3] Plaintiffs purport the $821,953.33 is a $100,000 discount from the amount due of $921,953.33.  (Lixin Decl. 2 at ¶ 7.)

3

Defendants R. Ijbara, M. Ijbara, New Venezia and Princess Sheet; (4) breach of accord against Defendants R. Ijbara, M. Ijbara, New Venezia and Princess Sheet; (5) breach of guaranty against R. Ijbara; (6) breach of covenants of good faith and fair dealing against Defendants R. Ijbara, M. Ijbara, New Venezia and Princess Sheet; (7) unjust enrichment against Defendants R. Ijbara, M. Ijbara, New Venezia and Princess Sheet; (8) fraud against Defendants R. Ijbara, M. Ijbara, New Venezia and Princess Sheet; (9) fraudulent transfer against Defendants R. Ijbara, M. Ijbara, New Venezia and Princess Sheet; (10) conspiracy to commit fraud against all Defendants; and (11) attachment against all Defendants.  (Am. Compl. ¶¶ 39-124.)

On December 15, 2011, Defendants filed the instant motion for partial summary judgment, Defendants' Motion.  Defendants seek dismissal of counts Seven (unjust enrichment), Eight (fraud), and Ten (conspiracy to commit fraud).  (Defs.' Br. 1.)  In addition, Defendants seek dismissal of the Amended Complaint in its entirety as it pertains to Plaintiff Gongmei for lack of standing to bring this action.  (*Id.* at 16-17.)  On January 17, 2012, Plaintiffs filed an opposition to Defendants' Motion, maintaining the validity of their claims.  On February 1, 2012, Defendants filed a reply to Plaintiffs' opposition.

On December 16, 2011, Plaintiffs filed their motion for partial summary judgment. Plaintiffs request that the court pierce the corporate veil and hold Defendants R. Ijbara and M. Ijbara personally liable for the actions of the Defendant Corporations.  (Pls.' Br. 1-2.)  On January 17, 2012, Defendants filed a brief in opposition to Plaintiffs' Motion.  On February 1, 2012, Plaintiffs filed a reply to Defendants' opposition.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact."  Fed. R. Civ. P.

56(a).  The materiality of an issue of fact is determined by whether, based on the substantive law, it would affect the outcome.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  However, "materiality is only a criterion for categorizing factual disputes in their relation to the legal elements of the claim and not a criterion for evaluating the evidentiary underpinnings."  *Id*.  An issue of material fact is genuine only if a reasonable jury could return a verdict for the non-movant.  *Id*.  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

Once the moving party has made a properly supported motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment."  *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990).  The primary inquiry is whether "the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251.  If the non-moving party can point to specific evidence showing that there is a genuine issue as to a material fact, summary judgment must be denied.  *Id.*; *see also Tomalewski v. State Farm Life Ins. Co.*, 494 F.2d 882, 884 (3d Cir. 1974) (stating that "where motions for summary judgment are made by both parties, if the pleadings present issue as to a material fact, there can be no valid summary judgment of the disputed facts.")

**DISCUSSION**

First, this Court notes that numerous facts are in dispute in this matter, many of which are material.[4]  Due to genuine issues of material facts, summary judgment is not appropriate for many of the points raised before this Court.  Below the Court will address these issues in the context of the two current motions for partial summary judgment.

I.   Plaintiffs' Motion

    *a.   Corporate veil piercing*

Generally, a corporation is considered an entity separate from its shareholders.  *Port Drivers Fed'n 18, Inc. v. All Saints Express., Inc.*, 757 F. Supp. 2d 443, 456 (D.N.J. 2010) (citing *Richard A. Pulaski Const. Co., Inc. v. Air Frame Hangars, Inc.*, 950 A.2d 868, 877 (N.J. Sup. Ct. 2008)).  "[U]nder certain circumstances, courts may disregard the corporate form and pierce the corporate veil to hold the shareholders responsible for the actions of the corporation."  *Port Drivers Fed'n 18*, 757 F. Supp. 2d at 456.  Veil piercing is an equitable remedy.  *Trustees of the Nat'l Elevator Indus. Pension v. Lutyk*, 332 F.3d 188, 192 (3d Cir. 2003).  "Before invoking the doctrine, a plaintiff must first establish an independent basis to hold the corporation liable."  *In re Casini*, 307 B.R. 800, 811 (Bankr. D.N.J. 2004) (citing *Lutyk*, 332 F.3d at 192).  Thus, it is essentially a two-step analysis: (1) a plaintiff must establish corporate liability for an underlying tort or contract claim and "if the corporate defendant has insufficient assets to satisfy a prospective judgment, the plaintiff may then [(2)] seek to pierce the veil."  *Id.* at 811-12.  Under

---

[4] For example, Defendants allege that the $4,000 paid to Plaintiffs was a deposit for goods ordered on April 2008, and not as payment for the goods ordered from 2006-2007.  (R. Ijbara Decl. ¶¶ 6, 10.)  In addition, Defendant R. Ijbara claims that beginning in late 2006, both he and his brother, M. Ijbara, discovered serious problems, in terms of the material, color, size, construction, and quality, with many of the shipments from Plaintiffs.  (*Id.* at ¶ 6.)  Defendants contend that they offered to return the goods, but Lixin persuaded Defendants not to return the goods.  (*Id.* at ¶ 7.)  Furthermore, Defendants assert that Lixin "agreed to accept steep discounts for some of the [goods] and, for others, Lixin instructed [Defendants] not to worry about payment at all."  (*Id.*)  Also the Payment Commitments that Plaintiffs claim Defendant R. Ijbara signed, Defendant R. Ijbara contends that he never signed them and they are actually forgeries.  (R. Ijbara Decl. ¶ 12.)

New Jersey law, when a corporation is so dominated by another corporation "that it had no separate existence and was merely a conduit of another corporation, and the dominant corporation used the controlled company to perpetuate a fraud or injustice[,]" piercing the corporate veil is appropriate. *Port Drivers Fed'n 18*, 757 F. Supp. 2d at 456 (citing *Dep't of Env't Prot. v. Ventron Corp.*, 468 A.2d 150, 165 (N.J. Sup. Ct. 1983)). There are seven factors that are relevant in deciding whether one corporation is organized as the mere instrumentality of another corporation:

> (1) gross undercapitalization; (2) failure to observe corporate formalities; (3) non-payment of dividends; (4) the insolvency of the debtor corporation at the time; (5) non-functioning of other officers or directors; (6) absence of corporate records; and (7) the fact that the corporation is merely a façade for the operations of the dominant stockholder or stockholders.

*Id.* at 456-57 (citing *Verni ex rel. Burnstein v. Harry M. Stevens, Inc.*, 903 A.2d 475, 498 (N.J. Super. Ct. App. Div. 2006)). In addition to these seven factors, a plaintiff must also allege that the dominant corporation or shareholder is using the subservient corporation "to perpetrate fraud, to accomplish injustice, or to circumvent the law." *Bd. of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 269 F.3d 164, 172 (3d Cir. 2002). "In the summary judgment context, the alter ego doctrine . . . will be applied only where the plaintiff alleges and proffers genuine and material facts from which a reasonable jury could find . . . that the defendant abused its corporate structure for fraudulent, unjust or inequitable purposes." *Portfolio Fin. Serv. Co. v. Sharemax.com Inc.*, 334 F. Supp. 2d 620, 627 (D.N.J. 2004).

In the instant matter, Plaintiffs move to pierce the corporate veil of New Venezia, Princess Sheet, Middle East, Liberty Textiles, and New Golden.[5]  According to Plaintiffs, they "simply requested that the Court determine the first prong of the analysis, that the corporate entities were mere instrumentalities of their dominant stockholders.  Indeed, Plaintiffs did not and do not request at this time for a piercing of the corporate veil, which Defendants have noted is an action of equitable remedy[.]"  (Pls.' Reply Br. 3.)

Defendants argue that there are genuine issues of material facts in dispute and that Plaintiffs' request is premature.  This Court agrees.  Plaintiff must first establish liability for the underlying action before attempting to establish that the corporate veil should be pierced.  As such, Plaintiffs' Motion will be denied.

II.  Defendants' Motion

a.  *Count Seven - Unjust Enrichment*

Quasi-contractual obligations "rest on the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another, and on the principle that whatsoever it is certain that a man ought to do, that the law supposes him to have promised to do."  *St. Paul Fire & Marine Ins. Co. v. Indem. Ins. Co. of N. Am.*, 158 A.2d 825, 828 (N.J. Sup. Ct. 1960) (internal citation omitted); *see also MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 733 n. 9 (D.N.J. 2008).  An essential requirement of an unjust enrichment claim under New Jersey law is that the "plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights."  *Bijur Lubricating Corp. v. Devco Corp.*, 332

---

[5] Plaintiffs claim that Middle East, Liberty Textiles, and New Golden are all alter ego corporations of Defendants R. Ijbara and M. Ijbara, and each has its principal place of business at 75 Levine Street, Paterson, NJ 07503.  (Am. Compl. ¶¶ 1(g)-(i), 44, 55-56, 64-65, 71-72, 81-82, 91-92, 100-01, 107-08, 112.)

F. Supp. 2d 722, 734 (D.N.J. 2004) (quoting *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. Sup. Ct. 1994)); *see also MK Strategies*, 567 F. Supp. 2d at 733.

Pursuant to New Jersey law, "recovery under unjust enrichment may not be had when a valid, unrescinded contract governs the rights of the parties." *Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 310 (3d Cir. 1982). This is because where the parties are acting pursuant to the express terms of an unrescinded contract, the "enrichment would not be 'unjust'" or beyond a party's contractual right. *See id.* at 312 (quoting *Craig v. Bemis Co.*, 517 F.2d 677, 684 (5th Cir. 1975)). Neither is it appropriate to characterize unjust enrichment as an alternative ground for the remedy of a breach of contract, because the remedy is merely duplicative of the plaintiff's contractual right. *See id* at 313.

Here, Plaintiffs' Counts One and Two include allegations of breach of contract and Plaintiffs' Count Seven seeks remedial action on the grounds of unjust enrichment. However, Plaintiffs note that Defendants "have not stipulated to the existence of any such contracts and Plaintiffs' allegations are therefore insufficient to warrant dismissal of their unjust enrichment claims." (Pls.' Opp'n Br. 14.) Although Defendants acknowledge there was an underlying contract for goods, Defendants assert that the later Payment Commitments that R. Ijbara personally guaranteed may be forgeries.[6] (Defs.' Br. 12; R. Ijbara Decl. at ¶ 12.) In sum, it appears both Plaintiffs and Defendants acknowledge the existence of the original underlying contractual obligation and course of dealing, but dispute the circumstances and validity of later Payment Commitments. (*See* Defs.' Countercl. ¶ 11, Pls.' Answer to Defs.' Countercl. ¶ 11; Pls.' Br. at 2-3, Defs.' Br. at 4-5.) Plaintiffs' unjust enrichment claim appears to be an

---

[6] Specifically, Defendant R. Ijbara stated that "Lixin claims that during his visits to the United States in August 2007 and September 2008, he secured written personal guarantees from me to satisfy payment of the invoices to New Venezia and Princess Sheet for the goods delivered to defendants between September 2006 and June 2007. I never signed these documents. In fact, they are forgeries, as they do not even closely resemble my actual signature." (R. Ijbara Decl. ¶ 12.)

alternative theory for a cause of action if the Payment Commitments or underlying agreements are not found to be valid contracts.[7]  Plaintiffs plead the existence of a valid contract; however, Defendants dispute that assertion with regard to the subsequent Payment Commitments.  (Am. Compl. ¶ 46; Defs.' Answer to Pls.' Am. Compl. ¶ 46.)  Plaintiffs allege that "[b]y supplying goods to Defendants New Venezia and Princess Sheet, and *by forbearing from bringing suit against the Defendants*, the Plaintiffs have conferred benefits upon the Defendants." (Am. Compl. ¶ 98 (emphasis added).)  While not addressing the validity of Plaintiffs' assertion, the Court notes that Plaintiffs are referencing more than the initial agreement for goods.  Much of Plaintiffs' Amended Complaint and opposition in response to Defendants' Motion similarly focuses on the Payment Commitments and Plaintiffs assert that new obligations were assumed. (Pls.' Opp'n 7.)

Based on the dispute regarding the Payment Commitments, this Court cannot clearly determine that Plaintiffs' unjust enrichment claim is merely duplicative of the rights already guaranteed them by the express terms of the contracts as Defendants argue.  While the unjust enrichment claim may not apply to the initial contract for goods, summary judgment would not be appropriate at this stage as to Count Seven regarding the Payment Commitments.

     b.  *Counts Eight and Ten - Fraud Claims*

        i.  *Fraud*

To establish a fraud claim under New Jersey law, a plaintiff must show that the defendant: "(1) [made] a material misrepresentation of a presently existing or past fact; (2) [had] knowledge or belief . . . of its falsity; (3) [had] an intention that the other person rely on it; (4) [had] reasonable reliance thereon by the [plaintiff]; and (5) [there are] resulting damages."

---

[7] The Amended Complaint states that the unjust enrichment claim is an alternative theory if "the Court finds that there is no enforceable contract."  (Am. Compl. ¶ 97.)  Given the context, it appears this statement refers to the contracts for the Payment Commitments.

*Angrisani v. Capital Access Network, Inc.*, 175 F. App'x. 554, 556 (3d Cir. 2006). Where parties have equal means of knowledge, even if they turn out to be false, statements as to future or contingent events, expectations and probabilities, or intentions for future action do not constitute misrepresentations unless made intentionally to deceive. *Id.* (citing *Middlesex Cnty. Sewerage Authority v. Borough of Middlesex*, 181 A.2d 818, 826 (N.J. Super. Ct. Law Div. 1962)).

Pursuant to Rule 9(b), "all averments of fraud or mistake . . . shall be stated with particularity." Fed. R. Civ. Pro. 9(b). The particularity requirements may certainly be fulfilled by allegations of date, place or time, "'but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *Florian Greenhouse, Inc. v. Cardinal IG Corp.*, 11 F. Supp. 2d 521, 526 (D.N.J. 1998) (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 788, 791 (3d Cir. 1984)).

In *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, the Third Circuit reversed the District Court's decision dismissing a plaintiff's fraud claim for failure to plead fraud with particularity. 742 F.2d at 791. The District Court found plaintiff's claims deficient because "Seville did not describe the date, place or time of the phone calls and letters that defendants allegedly used in furtherance of their fraudulent scheme. In addition, the district court objected that the complaint failed to set forth . . . 'the details of the alleged fraud or misrepresentations.'" *Id.* (quoting 567 F. Supp. at 1156). The Third Circuit found that District Court subjected Seville's fraud claim to too strict a scrutiny. *See id.* The Third Circuit held that where the plaintiff's complaint set forth the nature and subject of the alleged misrepresentation, the purpose of Rule 9(b) particularity – "to place the defendants on notice of the precise misconduct with which they are charged" – was fulfilled. *Id.*

In the instant matter, Defendants argue that Plaintiffs fail to plead fraud with specificity. (Defs.' Br. 14.)  Plaintiffs' Count Eight is for fraud against Defendants R. Ijbara, M. Ijbara, New Venezia and Princess Sheet.  (Am. Compl. ¶¶ 103-10.)  Count Ten is for conspiracy to "engage in fraud and other wrongful conduct, including without limitation inducing the Plaintiffs to supply hundreds of thousands of dollars in goods that the Defendants had no intention of paying for."  (*Id*. at ¶ 118.)  Plaintiffs specifically refer to actions of Defendants regarding the Payment Commitments including, for example: 1) promising to make payments in accordance with the Payment Commitments with no intention to pay or honor obligations; 2) Defendants "delay[ed] and avoid[ed] their obligations under the Payment Commitments by improperly transferring assets amongst themselves and/or to other entities or individuals; and 3) deliberately concealing from Plaintiffs "by affirmative misrepresentations and omissions, the true facts regarding their ability and willingness to make payments as required by the Payment Commitments." (*Id.* at ¶ 119.)

Plaintiffs have pled fraud with sufficient specificity to place Defendants on notice. Notably, Plaintiffs have pled specific facts to support their allegations of material misrepresentations by Defendants with knowledge of their falsity and intention for Plaintiffs to rely, as well as that Plaintiff did rely on the misrepresentation and were damaged.  (*See* Am. Compl.)  Defendants argue that Plaintiffs merely have damages equivalent to the contracted amounts; however, Plaintiffs do plead additional damages as discussed below.

### ii.  *Fraud claims with breach of contract*

New Jersey follows the economic loss doctrine which "bars a plaintiff from recovering purely economic losses suffered as a result of a defendant's negligent or otherwise tortious behavior, absent proof that the defendant's conduct caused actual physical harm to a plaintiff or

his property." *Ayala v. Assured Lending Corp.*, 804 F. Supp. 2d 273, 284 (D.N.J. 2011) (quoting *Pub. Serv., Enter. Grp., Inc. v. Phila Elec. Co.*, 722 F. Supp. 184, 193 (D.N.J.1989)). Furthermore, "New Jersey District Courts . . . hold that fraud claims not extrinsic to underlying contract claims are not maintainable as separate causes of action." *Gleason v. Norwest Mortg. Inc.*, 243 F.3d 130, 144 (3d Cir. 2001) (citing *Lo Bosco v. Kure Eng'g Ltd.*, 891 F. Supp 1020, 1033 (D.N.J. 1995)); *see also Pub. Serv.*, 722 F. Supp. at 200 (stating that fraud in the performance is barred by the economic loss doctrine); *Spring Motors Distribs, Inc. v. Ford Motor Co.*, 489 A.2d 660, 673 (N.J. Sup. Ct. 1985) (The New Jersey Supreme Court stated that "the U.C.C. is generally regarded as the *exclusive source* for ascertaining when a seller is subject to liability for damages if the claim is based on intangible economic loss not attributable to physical injury to person or harm to a tangible thing other than the defective product itself." (internal citation and quotation omitted) (emphasis in original)).

However, fraud claims that are extrinsic to the underlying contract claims, such as fraud in the inducement of the contract, are not barred by the economic loss doctrine. *See Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 564 (D.N.J. 2002) (noting that "to falsely state that one intends to honor a promise is a misstatement of present fact and breaches a separate and extraneous duty not to commit fraud"). Under New Jersey law, a cognizable fraud in the inducement is "[1] a material misrepresentation of a presently existing or past fact, [2] made with knowledge of its falsity and [3] with the intention that the other party rely thereon, [4] resulting in reliance by that party to his detriment." *Gleason*, 243 F.3d at 144-45 (quoting *Jewish Ctr. of Sussex Cnty. v. Whale*, 432 A.2d 521, 624 (N.J. Sup. Ct. 1981)); *see also State Capital Title & Abstract Co. v. Pappas Bus. Servs.*, 646 F. Supp. 2d 668, 681 (D.N.J. 2009). Examples of material misrepresentation include deliberate suppression of a material fact,

affirmative false statement, and "silence [] in the face of a duty to disclose." *Gleason*, 243 F.3d at 145. "[W]here a promise is given and the promisor knows at the time of promising that he has no intention of fulfilling it, the promise will constitute a misstatement of present fact and may support an allegation of fraud, etc." *Lo Bosco*, 891 F. Supp. at 1031-32 (internal citation omitted); *see also Capano v. Borough of Stone Harbor*, 530 F. Supp. 1254, 1264 (D.N.J. 1982).

In the instant matter, Plaintiffs assert that Defendants knew that they would not or could not pay and fulfill their obligations in the Payment Commitments at the time they were signed. (Pls.' Opp'n Br. 9.) Here, the Payment Commitments appear to be more than a promise to pay pre-existing obligations, but rather included new obligations. Plaintiffs claim that they agreed to accept a lesser amount than Defendants were obligated to pay and to receive the amounts later than the initial contract required. (*See* Pls.' Opp'n Br. 7.) Plaintiffs also argue that they were damaged by increased cost of collections due to Defendants R. Ijbara and M. Ijbara's personal use of funds and currency rate fluctuations. (*Id.* at 11.)

As noted, there are genuine issues of material facts in dispute that are closely intertwined with legal issues, particularly regarding the Payment Commitments and the circumstances surrounding them.[8] Counts Eight and Ten refer to alleged false statements or promises that led to the contracts and claimed execution of the Payment Commitments. As genuine issues of material facts are in dispute, this Court will deny summary judgment regarding these claims.

    c. *Plaintiff Gongmei's Standing*

A party has standing to sue where the party can demonstrate that it has suffered an injury in fact, that the conduct complained of was the cause of the injury suffered, and that the injury

---

[8] Defendants cite a portion of the Lixin transcript to show that there was no fraud in the inducement; however, the full context of the statements cited shows that this issue is still in dispute or at the very least unclear and the statements quoted are misleading. (*See* Defs.' Br. 11; Declaration of Reppert Kelly ("Kelly Decl."), Ex. A, Lixin Tr. 155:8-157:25.)

will be likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Where the complaint reasonably indicates the intended parties and a change in party name would not substantively alter the claims asserted, a misnomer in party name is amendable and would not be considered a new party in the action. *See Bradley v. Powles*, 218 A.2d 647, 648 (N.J. Super. Ct. App. Div. 1966) (where the claim was actually against the son, Henry E. Powles, instead of the father, Harry A. Powles, the court "remanded to the trial court with directions that the caption be amended to correct the defendant's name"); *see also Holmes v. City of Phila*, CIV.A. 05-2909, 2005 WL 1875524, *1 n. 1 (E.D. Pa. Aug. 4, 2005) (noting that change in spelling of defendants' name from Britten to Britton and Listren to Liston or Listen in the initial complaint and amended complaint was not a significant change since the parties were on notice of the claims against them, and the various claims remain identical).

However, pursuant to N.J.S.A. 14A:2-2.1(1) a foreign corporation transacting business in New Jersey must use its actual name in the transaction "in such a manner as not to be deceptive as to its actual identity . . . or [i]t has been authorized to transact business in this State, using an assumed name . . . or [i]t has first registered the alternate name as provided in this section." Nonetheless, the statute also states that:

> The failure of a corporation to file a certificate of registration or renewal of alternate name shall not impair the validity of any contract or act of such corporation and shall not prevent such corporation from defending any action or proceeding in any court of this State, but no such corporation shall maintain any action or proceeding in any court of this State arising out of a contract or act in which it used such alternate name until it has filed such a certificate.

N.J. Stat. Ann. § 14A:2-2.1(6) (West 2012); *see also African Bio-Botanica, Inc. v. Leiner*, 624 A.2d 1003, 1005 (N.J. Super. Ct. App. Div. 1993). In *African Bio-Botanica*, the checks, company letterhead, and purchase orders all bore the name "Ecco Bella" while its actual name

was "Ecco Bella Incorporated."   624 A.2d at 1004.   The court articulated that although Ecco

Bella Incorporated failed to file its alternate name, in adherence with N.J.S.A. 14A:2-2.1(6), "the

failure to file 'shall not impair the validity of any contract or act of such corporation and shall not

prevent such corporation from defending any action or proceeding in any court of this State[.]"

*Id*.   Other Circuits have addressed this issue, and noted that doing business under some other

name does not create a separate discreet entity.[9]

In the instant matter, Defendants assert that Plaintiff Gongmei is not properly identified

as a party to this suit.   (Def.'s Br. 16-17.)   Plaintiff Gongmei is listed in the initial complaint and

Amended Complaint as "Beijing Gongmei Import & Export Co., Ltd." but on the invoices and

the Payment Commitments, it is listed as "Beijing Gongmei Corporation Ltd."[10]   (*See* Am.

Compl.; *Id.* at Ex. A, Kelly Decl., Ex. D.)   However, Defendants were on notice that the

company they were transacting business with and the company that brought suit against them are

one and the same.   For example, both the initial and Amended Complaint have documents

attached listing "Beijing Gongmei Corporation."   (*See* Compl.; Am. Compl.)   Also, in

Defendants' moving brief and Defendants' counterclaim, the claims are against Defendant

"Beijing Gongmei Import & Export Co., Ltd." (Defs.' Br. 1; Defs.' Answer to Am. Compl. &

Countercl. 13.)   As case law indicates, Plaintiffs would be allowed to amend their Amended

Complaint to clarify their corporate name.   Therefore, Defendants' Motion pertaining to Plaintiff

Gongmei's standing is denied.

---

[9] *See generally Duval v. Midwest Auto City, Inc.*, 425 F. Supp. 1381, 1387 (D. Neb. 1977) *aff'd*, 579 F.2d 721 (8th Cir. 1978)(noting that the "designation 'd/b/a' means 'doing business as' but is merely descriptive of the person or corporation who does business under some other name.   Doing business under another name does not create an entity distinct from the person operating the business).   Also, the Ninth Circuit noted that to determine whether the omission of the actual name is a fatal defect, "[t]he inaccurate name is measured against the real name to determine if it was seriously misleading to other creditors."   *Siljeg v. Nat'l Bank of Commerce of Seattle*, 509 F.2d 1009, 1012 (9th Cir. 1975).
[10] Plaintiffs assert that Plaintiff Gongmei is not misidentified as a party.   (*See* Pls.' Opp'n Br. 3.)   Plaintiffs contend that "Beijing Gongmei Import & Export Co., Ltd." is the official Chinese name on file with the Chinese government, and that "Beijing Gongmei Corporation" is its unofficial English name.   (*Id.* at 4.)

**CONCLUSION**

For the foregoing reasons, this Court **DENIES** Plaintiffs' Motion and **DENIES**

Defendants' Motion.

s/Susan D. Wigenton, U.S.D.J.

Orig:   Clerk
cc:     Parties